UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

BRANCH BANKING AND TRUST COMPANY,
a North Carolina corporation,

       Plaintiff,

v.                     Civil Action No. 2:19-cv-00366

SERVISFIRST BANK;
MBH HIGHLAND, LLC d/b/a
HIGHLAND HOSPITAL;
WORLD GLOBAL CAPITAL, LLC d/b/a
FUNDKITE FUNDING;
GREEN CAPITAL FUNDING, LLC; and
MCA RECOVERY LLC,

       Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>


       Pending are (1) a motion to dismiss or alternatively transfer venue of the interpleader complaint, filed May 30, 2019 by defendants World Global Capital, LLC, Green Capital Funding, LLC, and MCA Recovery, LLC (collectively the "New York Defendants"), (2) a motion for remand, filed June 7, 2019 by defendant MBH Highland, LLC ("Highland"), a hospital, (3) a motion to realign the parties, filed June 20, 2019 by the New York Defendants, (4) a motion for leave to interplead and deposit interpleader funds with the court, filed July 12, 2019 by plaintiff Branch Banking and Trust Company ("BB&T"), and (5) a

motion requesting leave to file an amended complaint, filed July 26, 2019 by BB&T.

## I.

On December 11, 2019, the court granted the parties' joint motion to stay all deadlines and trial and pretrial dates in this case. This followed the court's memorandum opinion and order, entered November 1, 2019, granting the New York Defendants' motion to stay discovery pending a ruling on certain preliminary jurisdictional motions. As discussed therein, BB&T instituted this interpleader action in the Circuit Court of Kanawha County, West Virginia on April 5, 2019. Compl., ECF No. 1-1 ("ECF No. 1-1"). The underlying dispute revolves around competing claims to certain deposit accounts opened and maintained by defendant Highland at BB&T, with which Highland maintains its account at the BB&T branch located at 300 Summers Street, Charleston, West Virginia. Id. ¶¶ 9, 15-17.

The interpleader complaint alleges that in February 2019, defendants World Global Capital, LLC ("WGC") and Green Capital Funding, LLC, ("GCF") were each awarded a judgment in the Supreme Court of the State of New York against Wesley E. Mason III, Meridian Behavioral Health Systems, LLC ("Meridian")[1] and its

---

[1] Mr. Mason is the sole member of Meridian.

affiliates, including Highland.  ECF No. 1-1 ¶¶ 10-11.[2]  On February 27, 2019 and March 1, 2019, BB&T allegedly received two Information Subpoenas with Restraining Notices in connection with the two New York judgments stating that $305,466.91 (WGC) and $834,001.00 (GCF), respectively, remained due on the judgments plus interest, and instructing BB&T to freeze Highland's BB&T deposit accounts.  Id. ¶¶ 12-13; Highland's Cross-cl. ¶ 41, ECF No. 3.  On March 1, 2019, BB&T also received a levy and demand on Highland's deposit accounts, directing BB&T to remit the sum of $876,113.65 to GCF.  ECF No. 1-1 ¶ 14.  The interpleader complaint further alleges that "BB&T has been notified," by sources unidentified, that the funds requested may not properly belong to WGC or GCF and that ServisFirst Bank ("ServisFirst") "may hold a first priority perfected security interest in all assets of [Meridian] and its affiliates, including Highland, and has filed UCC financing statements regarding the same." Id. ¶ 15.  BB&T instituted this interpleader complaint as a disinterested stakeholder with no claim to the money in Highland's deposit accounts.  Id. ¶ 22.  BB&T seeks a court's determination of the proper distribution of the funds in these accounts among the conflicting claims of the defendants.  Id. ¶¶ 15, 20.

_____

[2] After the New York courts entered their judgments, Green Capital and World Global employed MCA Recovery, LLC as their collection agent.  See New York Defs.' Mem. Supp. Mot. Dismiss Interpleader Compl. 1 n.1, ECF No. 9.

The New York Defendants' entitlement to the funds relates to two contracts signed by Mr. Mason as "Seller," each titled "Future Receivables Sale and Purchase Agreement." See Castro Decl., Exs. 2, 4, ECF No. 9-1. On November 29, 2018, Mr. Mason — purportedly acting on behalf of Meridian, Highland, and other affiliates — signed an agreement whereby GCF agreed to pay $750,000.00 in exchange for Seller's right, title and interest in 25% of future receipts from receivables, i.e., money generated from goods and services sold, of Meridian, Highland, and other affiliates. Id., Ex. 2. The 25% yield from the receivables was to be remitted in daily installments of $9,599.00 until there has been paid the sum of $1,124,250.00 which is designated as the "Purchased Amount." Id. Mr. Mason signed an "Affidavit of Confession of Judgment" on November 30, 2018 that authorized the entry of judgment against Mr. Mason, Meridian, Highland, and other affiliates without notice in the event of default. Id., Exs. 4-5; Highland's Cross-cl. ¶ 23, ECF No. 3.

On January 22, 2019, WGC reached a similar agreement with Mr. Mason, this time signing on behalf of Highland and other affiliated entities, but not Meridian itself. See Castro Decl., Ex. 2, ECF No. 9-1. Doing business as Fundkite Funding, WGC agreed to pay $200,000.00 in exchange for Highland and other affiliated entities agreeing to sell 25% of each of their future receipts from receivables and remitting daily installments of

4

$2,591.00 for a total purchased amount of $298,000.00.  <u>Id.</u>  That same date, Mr. Mason signed another Affidavit of Confession of Judgment that WGC could enter in the event of default.  <u>Id.</u>, Ex. 2-3; Highland's Cross-cl. ¶ 27, ECF No. 3.

Highland filed its answer and crossclaims against the New York Defendants in the state court action on April 16, 2019, alleging that it was not a party to either of these agreements. <u>See</u> Highland's Answer & Cross-cl. ¶¶ 22, 26, ECF No. 3.  Still, GCF and WGC obtained Highland's BB&T deposit account information and began debiting payments from its accounts.  <u>Id.</u>  Between November 29, 2018 and February 20, 2019, GCF allegedly debited $337,964.00 from Highland's BB&T deposit accounts.  <u>Id.</u> ¶ 29. Between January 22, 2019 and February 20, 2019, WGC allegedly debited $51,820.00 from these accounts.  <u>Id.</u> ¶ 30.

On February 13, 2019, the New York Defendants allegedly each received a letter from ServisFirst informing GCF and WGC that ServisFirst has a perfected security interest in Highland's assets that has priority over WGC's and GCF's interests, and the New York Defendants must stop any collection efforts or else ServisFirst will consider these actions to be conversion.  Highland's Cross-cl. ¶ 32, ECF No. 3.  ServisFirst, which filed its own answer and crossclaims, alleges that as a condition of providing millions of dollars in financing for the operations of Meridian and its

affiliates, including Highland, it obtained a security interest in certain assets, including Highland's accounts. ServisFirst Cross-cl. ¶ 1, ECF No. 18. After Meridian and its affiliates defaulted on the loans, ServisFirst agreed to refrain from taking further action if Meridian, MBH West Virginia, LLC (Highland's parent entity),[3] and Highland agreed to conform to a budget approved by ServisFirst and refrain from transferring funds or assets subject to ServisFirst's security interest to any third parties without ServisFirst's consent. Id. ¶¶ 10–11.

Despite receiving express warnings that their authority to access Highland's deposit accounts was "revoked," GCF and WGC collectively debited an additional $48,760.00 between February 11 and February 14. Highland's Cross-cl. ¶¶ 33–34, ECF No. 3. After Highland and its related parties notified BB&T directly that GCF and WGC's account access was revoked, BB&T stopped GCF and WGC from debiting Highland's accounts after February 14, 2019. Id. ¶ 35. GCF and WGC then proceeded to obtain the New York judgments. On February 20, 2019, GCF obtained its judgment by confession, decreeing that Meridian, Mr. Mason, and other affiliates, including Highland, owed GCF $843,600.00 after defaulting on the November 29, 2018 transaction. Castro Decl., Ex. 5, ECF No. 9-1. On February 21, 2019, WGC obtained a separate

---

[3] Meridian is the sole member of Highland's parent entity, MBH West Virginia, LLC. ECF No. 1-1 ¶ 2.

judgment by confession, ruling that Highland, Mr. Mason, and other affiliates owed WGC $308.057.91 after defaulting on the January 22, 2019 agreement. Id., Ex. 3. BB&T was subsequently served with the two Information Subpoenas with Restraining Notices instructing it to freeze Highland's BB&T deposit accounts. Highland's Cross-cl. ¶¶ 41-44, ECF No. 3.

In sum, Highland alleges in its crossclaims that it possesses a valid claim to the deposit funds, subject to ServisFirst's perfected security interest (Count I), the New York Defendants violated the Uniform Enforcement of Foreign Judgments Act ("UEFJA"), W. Va. Code § 55-14-2, by failing to domesticate the New York judgments in West Virginia (Count II), the New York Defendants violated the Business Registration Tax Act (Count III), MCA Recovery, LLC violated the Collection Agency Act of 1973 (Count IV), WGC violated the Trade Names Act, W. Va. Code § 47-8-4 (Count V), WGC and GCF committed usury by concealing that the purported factoring transactions were in fact loan agreements charging in excess of 18 percent interest (Count VI), unjust enrichment/disgorgement by WGC and GCF (Count VII), and tortious interference with business relations by the New York Defendants (Count VIII). See Highland's Cross-cl., ECF No. 3. ServisFirst asserts nearly identical crossclaims against the New York Defendants, except it brings a claim of conversion instead of usury under Count VI and brings an additional claim of fraud

against the New York Defendants.  See ServisFirst's Cross-cl., ECF

No. 18.[4]

       After receiving service of process on April 12, 2019,

the New York Defendants filed a notice of removal on May 8, 2019,

pursuant to 28 U.S.C. §§ 1332, 1335, 1441, and 1446 et seq.  See

Not. Removal, ECF No. 1 ("ECF No. 1").  The notice mirrors the

case caption from the state interpleader action, which positions

BB&T as the nominal plaintiff and the New York Defendants,

ServisFirst, and Highland as defendants.  The notice also alleges

that diversity jurisdiction exists in this case because BB&T is a

citizen of North Carolina, ServisFirst is a citizen of Alabama,

the New York Defendants are citizens of New York, and Highland is

a citizen of Tennessee.  ECF No. 1 ¶ 5; Compl. ¶¶ 1–6; 28 U.S.C.

§ 1332.

       On June 7, 2019, however, Highland moved to remand this

case to state court because the New York Defendants failed to

obtain the consent of either Highland or ServisFirst before

removing to federal court.  Highland's Mem. Supp. Mot. Remand, ECF

No. 14 ("ECF No. 14"); George Decl. ¶ 5, ECF No. 14-1.  The New

---

[4] ServisFirst contends that it filed its answer and crossclaims in
the state court action on May 8, 2019, the same day that the New
York Defendants filed a notice of removal in this court.  See
ServisFirst's Answer & Cross-cl. 1 n.1, ECF No. 18.  The New York
Defendants maintain that they were never served with ServisFirst's
answer and crossclaims until they were filed in this court June 7,
2019.  See New York Defs.' Mot. Stay 1 n.1, ECF No. 23.

York Defendants maintain that removal was proper notwithstanding the lack of unanimous consent because they moved on June 20, 2019 to realign Highland and ServisFirst as plaintiffs, which they believe would solve Highland's jurisdictional concerns and properly capture the parties' true posture in this litigation. New York Defs.' Mot. Realign, ECF No. 25. Both Highland and ServisFirst oppose the motion to realign the parties.

BB&T does not oppose the motion to realign the parties so long as the court finds jurisdiction proper. See BB&T's Resp. Mot. Realign & Mot. Stay, ECF No. 45 ("ECF No. 45"). BB&T filed a motion for leave to interplead and deposit interpleader funds into the court on July 12, 2019, pursuant to Federal Rule of Civil Procedure 67 and Local Rule 67.1. BB&T's Mot. Deposit Interpleader Funds, ECF No. 46 ("ECF No. 46"). As a nominal party, BB&T seeks to deposit the funds with the court and be dismissed from this case. ECF No. 45 at 2. The New York Defendants argue that depositing the funds in this court would be premature until the court decides whether this interpleader action is proper. New York Defs.' Reply to BB&T's Resp. Mot. Realign & Mot. Stay 1–2, ECF No. 51. The court will address each of these issues in turn.

A. <u>Motion to Remand and Motion to Realign the Parties</u>

In moving to remand, Highland argues that the notice of removal is "fatally defective" because the New York Defendants' failed to obtain the consent of Highland and ServisFirst, violating the "rule of unanimity" under 28 U.S.C. § 1446(2)(A). <u>See</u> ECF No. 14 at 1.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994). The Fourth Circuit has observed that it is "obliged to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated." <u>Md. Stadium Auth. v. Ellerbe Becket Inc.</u>, 407 F.3d 255, 260 (4th Cir. 2005) (quoting <u>Mulcahey v. Colum. Organic Chem. Co.</u>, 29 F.3d 148, 151 (4th Cir. 1994)). Congress has intended that the federal courts should "resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." <u>Marshall v. Manville Sales Corp.</u>, 6 F.3d 229, 232 (4th Cir. 1993). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The party seeking removal bears the burden of

establishing that the court to which the case is removed has
federal jurisdiction over it.  Mulcahey, 29 F.3d at 151.

Title 28 U.S.C. § 1441(a) governs federal removal
jurisdiction and provides as follows:

> [A]ny civil action brought in a State court of which the
> district courts of the United States have original
> jurisdiction, may be removed by the defendant . . . to
> the district court of the United States for the district
> and division embracing the place where such action is
> pending.

28 U.S.C. § 1441(a).  Section 1446(b) adds that "all defendants
who have been properly joined and served must join in or consent
to the removal of the action" and that each defendant "shall have
30 days after receipt by or service on that defendant of the
initial pleading or summons . . . to file the notice of removal."
28 U.S.C. § 1446(b)(2)(A)-(B).  Federal courts have long
recognized this so-called "rule of unanimity," which requires each
defendant to consent to removal.  See Lapides v. Bd. of Regents of
the Univ. Sys. of Ga., 535 U.S. 613, 620 (2002); Mayo v. Bd. of
Educ. of Prince George's Cty., 713 F.3d 735, 741 (4th Cir. 2013)
("The Supreme Court has construed the statute to include a
'unanimity requirement,' such that all defendants must consent to
removal.").  Griffioen v. Cedar Rapids & Iowa City Ry. Co., 785
F.3d 1182, 1186 (8th Cir. 2015) (noting existence of rule of
unanimity prior to its codification in the 2011 amendments to 28
U.S.C § 1446(b)).  "The rule of unanimity helps to effectuate

Congress's intent in limiting removal to prevent it from being used too broadly or casually." Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co., 736 F.3d 255, 259 (4th Cir. 2013). This court has explained that "[t]o allow one party, through counsel, to bind or represent the position of other parties without their express consent to be so bound would have serious adverse repercussions, not only in removal situations but in any incident of litigation." Dorsey v. Borg-Warner Auto., Inc., 218 F. Supp. 2d 817, 820 (S.D.W. Va. 2002) (quoting Creekmore v. Food Lion, Inc., 797 F. Supp. 505, 509 (E.D. Va. 1992)).

Yet, the lack of unanimous consent is a procedural defect, not jurisdictional. Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 203 (4th Cir. 2006) ("Failure of all defendants to join in the removal petition does not implicate the court's subject matter jurisdiction. Rather, it is merely an error in the removal process."); Lloyd v. Cabell Huntington Hosp., Inc., 58 F. Supp. 2d 694, 697–98 (S.D.W. Va. 1999) ("failure of all defendants to join in the removal notice constitutes a procedural defect, which may be waived if not objected to within 30 days after filing of the removal notice"). Therefore, certain exceptions apply to the rule of unanimity. For one, nominal defendants who have "no immediately apparent stake in the litigation either prior or subsequent to the act of removal" need not join in the removal. See Hartford Fire, 736 F.3d at 259–60.

Courts have also applied exceptions to defendants that were unserved or unknown at the time of removal. <u>See</u> <u>Klein v. Manor Healthcare Corp.</u>, 19 F.3d 1433 n.8 (6th Cir. 1994); <u>Mason v. Int'l Bus. Machines, Inc.</u>, 543 F. Supp. 444, 446 n.1 (M.D.N.C. 1982).

The New York Defendants ask the court to apply another exception to this case: "parties that are aligned in interest with the plaintiff are not required to join or consent to the removal." <u>Herbalife Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, No. CIV.A. 5:05CV41, 2006 WL 839515, at *6 (N.D.W. Va. Mar. 30, 2006) (citing <u>Smilgin v. New York Life Ins. Co.</u>, 854 F. Supp. 464, 465–66 (S.D. Tex. 1994) (holding that unanimous consent was not required because non-consenting defendant "should not be considered a 'defendant' for the purpose of joinder in removal" when his and "the Plaintiffs' interest in the primary thrust of this lawsuit are the same")); New York Defs.' Resp. Opp. Mot. Remand 2-3, ECF No. 29.  Federal courts are not bound by the alignment of the parties, but rather must "look beyond the pleadings and arrange the parties according to their sides in the dispute." <u>Jackson v. Home Depot U.S.A., Inc.</u>, 880 F.3d 165, 172 (4th Cir. 2018) (quoting <u>Indianapolis v. Chase Nat'l Bank of City of N.Y.</u>, 314 U.S. 63, 69 (1941)).  It is "settled authority in this circuit and elsewhere" that "post-removal party realignment to create diversity is permissible." <u>Lott v. Scottsdale Ins. Co.</u>, 811 F. Supp. 2d 1220, 1223 (E.D. Va. 2011) (citing cases).

Likewise, lack of unanimous consent does not necessarily defeat diversity jurisdiction when the defendants share adverse interests and proper realignment would moot the issue. See Lott, 811 F. Supp. 2d at 1222 n.2 (noting that "defendants are not required to consent to removal given the realignment [of the] defendants as plaintiffs for jurisdictional purposes"); Ohio Cas. Ins. Co. v. RLI Ins. Co., No. 1:04CV483, 2005 WL 2574150, at *4 (M.D.N.C. Oct. 12, 2005) ("If a defendant is disregarded or is realigned for jurisdictional purposes, that defendant need not consent to removal, and the Court will evaluate jurisdiction based on the positions of the parties after the realignment."). Thus, the motion to remand would be moot if the court realigned ServisFirst and Highland as plaintiffs rather than allowing them to defeat removal.

Even if realignment were allowed, Highland argues that the New York Defendants' motion to realign must be dismissed as untimely. Highland's Reply Mot. Remand 2-3, ECF No. 31 ("ECF No. 31"). Under 28 U.S.C. § 1446(a), the notice of removal must "contain[] a short and plain statement of the grounds for removal." Highland interprets the New York Defendants' realignment arguments as "new allegations of a jurisdictional basis" barred by 28 U.S.C § 1446 and § 1653[5] because they

---

[5] "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C § 1653.

effectively seek to amend the notice of removal after the 30-day deadline.[6]  Highland argues that the New York Defendants should have sought realignment in state court and that the failure to even mention the need for realignment in the notice of removal precludes realignment after the fact.  ECF No. 31 at 2.

Highland bases this argument on <u>Wood v. Crane Co.</u>, where the court noted the following:

> [A]fter thirty days, district courts have discretion to permit amendments that correct allegations already present in the notice of removal.  Courts have no discretion to permit amendments furnishing new allegations of a jurisdictional basis.

764 F.3d 316, 323 (4th Cir. 2014) (citing <u>Newman-Green, Inc. v. Alfonzo-Larrain</u>, 490 U.S. 826, 831 (1989)).[7]  Yet, this principle

---

[6] The New York Defendants filed the motion to realign 11 weeks after the case was filed in state court and 43 days after it was removed.

[7] In <u>Wilkins v. Corr. Med. Sys.</u>, our court of appeals also noted in dicta:

> All defendants must unanimously join in or consent to a removal action within 30 days of receiving service of the complaint.  Because the filing requirements contained in 28 U.S.C. § 1446 are mandatory, there is no federal jurisdiction when one of the defendants fails to join in, file his own, or officially and unambiguously consent to, a removal petition within 30 days of service.

931 F.2d 888 n.2 (4th Cir. 1991).  This dicta is unpersuasive insofar as there is no indication that the case involved a purportedly untimely motion to realign the parties and the Fourth Circuit has since clarified that the lack of unanimous consent is a procedural defect, but "does not implicate the court's subject matter jurisdiction."  <u>Payne</u>, 439 F.3d at 203.

from _Wood_ was based on _Newman-Green, Inc. v. Alfonzo-Larrain_, 490
U.S. 826 (1989) and the proposition that "§ 1653 speaks of
amending 'allegations of jurisdiction,' which suggests that it
addresses only incorrect statements about jurisdiction that
actually exists, and not defects in the jurisdictional facts
themselves." _Id._ at 831. _Wood_ distinguished "new allegations of
a jurisdictional basis" from cases where "amendment is appropriate
for technical changes, such as the exact grounds underlying
diversity jurisdiction." _Wood_, 764 F.3d at 323; _Yarnevic v._
_Brink's, Inc._, 102 F.3d 753, 755 (4th Cir. 1996) (finding that
"[w]hile it would have been prudent for [defendant] to file a
supplemental petition specifying the new basis for diversity
within 30 days" after plaintiff moved from Ohio to Pennsylvania,
"it was not required" because complete diversity existed either
way).

        In _Wood_, the defendant had originally removed based on a
federal defense to one of the plaintiff's state tort claims, but
the case was remanded after the plaintiff had dropped the only
claim to which the federal defense applied. 764 F.3d at 318. The
defendant then sought to amend its notice of removal to add an
entirely new federal defense even though the original 30-day
removal period had long since elapsed. _Id._ at 318–20. The Fourth
Circuit rejected the defendant's belated effort because the
failure to include the new defense in the original notice of

removal was neither inadvertent "nor a clerical error, but instead a strategic choice."  764 F.3d at 324.

Highland also compares this case to <u>Andalusia Enterprises, Inc. v. Evanston Insurance Co.</u>, which rejected a motion to realign the parties that was filed after the 30-day deadline.  487 F. Supp. 2d 1290, 1293 (N.D. Ala. 2007); ECF No. 31 at 5–6.  But the facts of that case were quite distinct.  The original notice of removal in <u>Andalusia Enterprises</u> alleged that the non-diverse defendant — who did not consent to the removal and moved to remand — was fraudulently joined and/or a nominal party. 487 F. Supp. 2d at 1293.  In truth, the non-diverse defendant was neither fraudulently joined nor a nominal party, but the tort claimant in the underlying state action and a necessary party under Alabama law.  <u>Id.</u> at 1293.  Thus, there was no question at the time of the notice of removal that realignment would have been necessary to achieve complete diversity.  Inasmuch as the parties were not diverse, the court held "that it must decline jurisdiction when no jurisdictional basis is affirmatively shown in the removal papers."  <u>Id.</u> at 1295.  The court added that "[t]he fact that realignment was not referenced by any defendant until after the expiration of the thirty (30) day period for removal, and then only after motions to remand had been filed, further disinclines the court to realign [the non-diverse defendant], especially over vigorous opposition."  <u>Id.</u>

17

Numerous other circuits have held that the 30-day deadline is not jurisdictional, but rather constitutes a procedural defect.  See Universal Truck & Equip. Co. v. Southworth-Milton, Inc., 765 F.3d 103, 110 (1st Cir. 2014) (citing cases).  Moreover, unlike Wood and Andalusia, no jurisdictional defect exists here because all the parties are diverse no matter how this case is aligned.  BB&T is a citizen of North Carolina, Highland is a citizen of Tennessee,[8] ServisFirst is a citizen of Alabama, and the New York Defendants are citizens of New York. ECF No. 1-1 ¶¶ 1-6; ECF No. 1 ¶ 5.  The New York Defendants do not seek to add any claims or defenses or assert new facts, but simply request that the court realign the parties according to their interests in the litigation.

There is little reason here to allow defendants with adverse interests to thwart removal by withholding their consent.  In Premier Holidays International, Inc. v. Actrade Capital, Inc., 105 F. Supp. 2d 1336(N.D. Ga. 2000), the court similarly reasoned that "no policy is served by allowing a mislabeled 'defendant' to defeat the true defendants' right to remove the case by

---

[8] Meridian is the sole member of Highland's parent entity, MBH West Virginia, LLC.  ECF No. 1-1 ¶ 2.  Meridian's sole member is Mr. Mason, who is a resident of Tennessee.  Id.  None of the parties dispute that Highland is a citizen of Tennessee.  See Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011) ("For purposes of diversity jurisdiction, the citizenship of a limited liability company . . . is determined by the citizenship of all of its members . . . .").

withholding its consent." __Id.__ at 1341. "The joinder requirement is designed only to insure a unanimous choice of a federal forum by the defendants. It cannot reasonably be understood to give a party who in reality occupies a position in conflict with that of other defendants a veto over the removal of the action." __Id.__ (quoting __First Nat. Bank of Chicago v. Mottola__, 302 F. Supp. 785, 790 (N.D. Ill. 1969), __aff'd sub nom. First Nat. Bank of Chicago v. Ettlinger__, 465 F.2d 343 (7th Cir. 1972)). Inasmuch as the rule of unanimity is a procedural rather than jurisdictional requirement, the failure to mention the need for realignment in the notice of removal does not automatically bar motions to realign after the 30-day deadline expires.

Having determined that the motion to realign the parties was timely, the court next turns to how the parties should be aligned. Under the "principal purpose test," the Fourth Circuit instructs courts to follow two steps to determine the proper alignment of the parties. __U.S. Fid. & Guar. Co. v. A & S Mfg. Co.__, 48 F.3d 131, 133 (4th Cir. 1995). "First, the court must determine the primary issue in the controversy. Next, the court should align the parties according to their positions with respect to the primary issue. If the alignment differs from that in the complaint, the court must determine whether complete diversity continues to exist." __Id.__

All parties agree that the primary issue in this case is determining who is entitled to the deposit funds held by BB&T.  New York Defs.' Mem. Supp. Mot. Realign 5-6, ECF No. 26 ("ECF No. 26"); Highland's Resp. Opp. Mot. Realign 5, ECF No. 37 ("ECF No. 37"). However, the parties dispute how the court should position the parties.  There is no doubt that ServisFirst and Highland's interests are aligned.  ECF No. 26 at 2; ECF No. 37 at 8.  BB&T also seeks to remove itself from this interpleader action entirely as a mere nominal plaintiff, and therefore the court need not consider its interests for purposes of realignment.  See Tune, Entrekin & White, P.C. v. Magid, 220 F. Supp. 2d 887, 889 (M.D. Tenn. 2002); Hidey v. Waste Sys. Int'l, Inc., 59 F. Supp. 2d 543, 546 (D. Md. 1999); ECF No. 45 at 3-4.

The only remaining question is how to situate ServisFirst and Highland against the New York Defendants.  In Hidey v. Waste Systems International, Inc., 59 F. Supp. 2d 543 (D. Md. 1999), where the primary issue was also a determination of who is entitled to interpleader funds, the court reasoned that "the realigned parties should be positioned so that their rights are the same as they would have been had they not been artificially aligned as co-defendants in the interpleader action."  Id. at 545-46. The court will conduct a similar analysis here.

According to the New York Defendants, Highland and ServisFirst should be aligned as plaintiffs.  The New York

Defendants infer from the pleadings that ServisFirst and Highland
coordinated with BB&T, which filed the interpleader complaint in
"a concerted effort" to undermine, or collaterally attack, the
validity of the New York judgments. New York Defs.' Reply to
Highland's Opp. Mot. Realign 3, ECF No. 41 ("ECF No. 41"). The
New York Defendants maintain that ServisFirst and Highland took
advantage of the jurisdiction manufactured by the interpleader
action to contest the judgments in West Virginia, rather than
properly asserting any claims in New York. ECF No. 26 at 2.
According to this argument, this is not a typical interpleader
action where the court can make a straightforward determination as
to the proper disbursement of funds. New York Defs.' Reply to
ServisFirst's Opp. Mot. Realign 4, ECF No. 40. Rather, the New
York Defendants contend that ServisFirst and Highland "seek to
reestablish the status quo between borrower and lender that
existed before MBH Highland voluntarily confessed judgment in New
York." Id. Highland and ServisFirst have also asserted various
crossclaims against the New York Defendants and seek "to challenge
the validity of the New York judgments through these proceedings."
ECF No. 26 at 7.

        Highland counters that this litigation only arose
"because of the New York Defendants' affirmative conduct in trying
to levy upon and seize the funds maintained at West Virginia BB&T
bank accounts." ECF No. 37 at 3, n.2. As such, the New York

Defendants are purportedly the real plaintiffs here because they seek to enforce, rather than defend, the New York judgments. Specifically, Highland argues that the New York Defendants had no choice but to bring suit as plaintiffs in West Virginia to domesticate their judgments under W. Va. Code § 55-14-2 of the UEFJA. ECF No. 37 at 2. Had they done so, Highland argues that it would have been properly positioned as a defendant and would have raised essentially the same defenses and defensive claims. Id. at 8. Likewise, ServisFirst, as a priority creditor with a vested interest in Highland's continued operations, would be a natural defendant in this case. Id. at 7.

In various briefing before the court, the New York Defendants contend that the UEFJA does not require them to domesticate judgments when they took no action against West Virginia property because the funds are not located in West Virginia. ECF No. 41 at 2. To rebut this argument, Highland cites Axelrod v. Premier Photo Service, Inc., 173 S.E.2d 383 (W. Va. 1970), in which out-of-state plaintiffs sued in West Virginia to enforce a judgment order of a New York court. ECF No. 31 at 8. The West Virginia Supreme Court accorded the New York judgment full faith and credit and found that it could not challenge the validity of such judgments "except upon the ground of lack of jurisdiction of the court which rendered the judgment or upon the ground of fraud in the procurement of the judgment." 173 S.E.2d at 388. Highland interprets Axelrod to mean the out-of-state plaintiffs sued in West

Virginia out of an obligation to comply with the UEFJA, but the case makes no mention of the UEFJA or the plaintiffs' purported obligation to domesticate the judgment. ECF No. 31 at 8.

Rather, the UEFJA merely permits parties to file foreign judgments in West Virginia courts. <u>Gonzalez Perez v. Romney Orchards, Inc.</u>, 399 S.E.2d 50, 54 n.11 (W. Va. 1990). Highland cites § 55-14-2 of the statute, which provides, in relevant part:

> A copy of any foreign judgment authenticated in accordance with an act of Congress or the statutes of this state <u>may</u> be filed in the office of the clerk of any circuit court of this state. The clerk shall treat the foreign judgment in the same manner as a judgment of any circuit court of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating or staying as a judgment of a circuit court of this state and <u>may</u> be enforced or satisfied in like manner . . .

W. Va. Code Ann. § 55-14-2 (emphasis added). Although the UEFJA imposes criminal penalties for failure to comply with the provision, such penalties only apply to those who choose to bring suit in West Virginia to enforce a foreign judgment. <u>Id.</u> Nothing in the statute or <u>Axelrod</u> obligated the New York Defendants to file suit in West Virginia. In fact, § 55-14-6 of the statute explicitly states that this is an optional procedure and that "[t]he right of a judgment creditor to bring an action to enforce his judgment instead of proceeding under this article remains unimpaired." W. Va. Code Ann. § 55-14-6.

Highland's argument relies on the assumption that the "Restraining Notices" used against BB&T are unlawful under New York's "separate entity rule," and therefore suing under the UEFJA was the only avenue left to enforce the judgments. Highland's Resp. Opp. Mot. Dismiss Highland's Cross-cl. 16-17, ECF No. 20. In <u>Tire Engineering & Distribution L.L.C. v. Bank of China Ltd.</u>, 740 F.3d 108 (2d Cir. 2014), the Second Circuit noted that the "separate entity rule . . . provides that even if a bank is subject to personal jurisdiction due to the presence of a New York branch, the other branches of the bank will be treated as separate entities for certain purposes, such as attachments, restraints, and turnover orders." <u>Id.</u> at 111; <u>see</u> <u>also</u> <u>Cronan v. Schilling</u>, 100 N.Y.S.2d 474, 476 (N.Y. Sup. Ct. 1950) ("[F]or purposes of attachment, among others, each branch of a bank is a separate entity, in no way concerned with accounts maintained by depositors in other [branches] or at the home office.").

However, <u>Tire</u> found that the New York Court of Appeals had never directly addressed the separate entity rule itself and that the continued viability of the rule was unsettled, which led the Second Circuit to certify the question "whether the separate entity rule precludes a judgment creditor from ordering a garnishee bank operating branches in New York to restrain a debtor's assets

held in foreign branches of the bank." 740 F.3d at 113-14, 118.[9]
The New York Court of Appeals answered the certified question in
Motorola Credit Corp. v. Standard Chartered Bank, with the New York
Court of Appeals "conclud[ing] that a judgment creditor's service of
a restraining notice on a garnishee bank's New York branch is
ineffective under the separate entity rule to freeze assets held in
the bank's foreign branches." 21 N.E.3d 223, 225, 230 (N.Y. 2014).

Yet, Motorola clarified that "the separate entity rule
functions as a limiting principle in the context of international
banking." 21 N.E.3d at 228 (emphasis added). The New York Court of
Appeals applied the separate entity rule where Motorola served a
restraining order on the New York branch of a foreign bank
headquartered in the United Kingdom. Id. at 225. Insofar as "the
separate entity rule promotes international comity and serves to
avoid conflicts among competing legal systems," it has little bearing
on the New York Defendants' claims to the funds held at BB&T, a North
Carolina banking institution. Id. at 229; ECF No. 1-1 ¶ 1. Although
Motorola mentioned earlier cases that applied the separate entity

---

[9] The question was so certified in Tire, which also certified a
second, related question from a companion case. 740 F.3d at 117.
The New York Court of Appeals withdrew the second certified
question after the parties in the companion case entered into a
stipulation to dismiss the claims. See Tire Eng'g & Distribution
L.L.C. v. Bank of China Ltd., 7 N.E.3d 506 (N.Y. 2014); Motorola
Credit Corp. v. Standard Chartered Bank, 771 F.3d 160, 161 n.1 (2d
Cir. 2014).

rule to domestic banks, it explicitly cautioned against applying its holding outside the international context:

> Most cases applying the separate entity rule involved bank branches in foreign countries, but some have applied the rule to bar a restraint even where the unserved branch is located in New York (see e.g. Det Bergenske Dampskibsselskab v. Sabre Shipping Corp., 341 F.2d 50, 53-54 [2d Cir.1965]). In this case, we have no occasion to address whether the separate entity rule has any application to domestic bank branches in New York or elsewhere in the United States. The narrow question before us is whether the rule prevents the restraint of assets held in foreign branch accounts, and we limit our analysis to that inquiry.

Id. at 226 n.2 (alternation in original).

In a case cited by BB&T, the New York Appellate Division later explained, "The continuing validity of this arcane rule was recently upheld by the Court of Appeals in Motorola . . . solely with respect to restraining notices and turnover orders affecting assets located in foreign branch accounts." B & M Kingstone, LLC v. Mega Int'l Commercial Bank Co., 131 A.D.3d 259, 266, (N.Y. App. Div. 2015) (emphasis added); ECF No. 30 at 10; see also Wells Fargo Bank NA v. Wyo Tech Inv. Grp. LLC, No. CV-17-04140-PHX-JJT, 2018 WL 3648417, at *3 (D. Ariz. Aug. 1, 2018) ("Motorola . . . made clear that the separate entity rule only applies to accounts in foreign branches."). None of these cases or the UEFJA support the proposition that the New York Defendants must be positioned as plaintiffs if the court decides to realign the parties.

Highland also argues that the New York Defendants' actions constituted "abuses [of] the use of confessions of judgment by creditors against out-of-state debtors," which the New York legislature recently outlawed under Senate Bill S3965. ECF No. 37 at 5-6 (quoting id., Ex. F) (alteration in original); see N.Y. C.P.L.R. 3218; S. 6395, 242nd Leg. (N.Y. 2019); ECF No. 37, Ex. G.[10] Highland's reliance on this measure is peculiar because the legislation took effect on August 30, 2019 and it makes clear that it will "apply to judgments by confession entered upon affidavits filed on or after such effective date." ECF No. 37, Ex. G.; S. 6395, 242nd Leg. (N.Y. 2019). Mr. Mason signed the affidavits of confession of judgment on November 30, 2018 and January 22, 2019 immediately upon execution of the underlying agreements. Highland's Cross-cl. ¶¶ 23, 27, ECF No. 3; ECF No. 10, Exs. 3, 5. Insofar as Senate Bill S3965 had not yet taken effect, Highland fails to explain how

---

[10] Highland quotes the sponsor memo describing that the bill will amend New York practices as follows:

> This measure seeks to correct such abuse without frustrating legitimate use of confessions of judgment within the State. It limits the venue for filing a confession of judgment to in-state debtors, based on where the debtor resided at the time the affidavit was executed or, if the debtor moves, where he or she resides at the time of filing the judgment. This approach is intended to prevent creditors from abusing confessions of judgment by using New York courts as a venue to profit from debtors with no New York connection.

ECF No. 37 at 6; id., Ex. F.

New York law required it to bring suit as plaintiff in West Virginia.[11]

Alternatively, Highland and ServisFirst suggest that if there are equal reasons to align the parties as plaintiffs or defendants, the court should exercise its discretion and remand the case instead of arbitrarily deciding which party to designate as plaintiff.  ECF No. 37 at 8 n.6; ECF No. 39 at 3.  In Tune, Entrekin & White, P.C. v. Magid, for example, the district court decided to "err in favor of remanding and allowing the state court to either decide the case or realign the parties." 220 F. Supp. 2d 887, 892 (M.D. Tenn. 2002).  The case arose out of an interpleader action by an escrow agent against the landowners and tenants of a property, who both had claim to a condemnation award held in the escrow account.  Id. at 888.  Not only did the landowner defendants not consent to the removal, but they were residents of the state in which the original action was filed.  Id. at 890.  Realignment was necessary to ensure complete diversity and the court concluded that

_____

[11] The sponsor memo explained New York law prior to the bill's passage as follows:

> Under the current statute, a confession of judgment is a written and signed statement, in the form of an affidavit, in which a debtor admits liability and agrees to pay the sum confessed as owed to the creditor pursuant to an agreement. . . . When the debtor does not perform or pay according to the agreement, a confession may be filed as a judgment with the county clerk, even in the absence of a pending court action.

ECF No. 37, Ex. F.

under these facts, "where the plaintiff is dropping out completely and the two defendants are indistinguishable in terms of who should be plaintiff and who should be defendant, realignment should be exercised with caution if it would expand federal jurisdiction." Id. at 892–93.

Unlike Tune, where aligning the landowner as plaintiff would have artificially expanded the court's jurisdiction because complete diversity would not have otherwise existed, complete diversity exists here no matter the realignment. The court must look past the pleadings and ignore the artificial designation of the parties in this interpleader action. Jackson, 880 F.3d at 172. If Highland and ServisFirst had sued the New York Defendants, they also could have done so in federal court under 28 U.S.C. § 1332, or the New York Defendants could have removed the case under 28 U.S.C. § 1441. Had the New York Defendants sued to enforce the judgments under the UEFJA, they could have done so in federal court. 28 U.S.C. § 1332. Either way, this case belongs in federal court and the court should respect the New York Defendants' preference. Rejecting the motion to realign would be "contrived solely to defeat federal jurisdiction" even where subject matter jurisdiction exists. See Farmers Bank & Tr. Co. v. Ameris of Arkansas, LLC, No. 3:10-CV-00173 BSM, 2010 WL 4269192, at *3 (E.D. Ark. Oct. 25, 2010). Therefore, the New York

Defendants will remain defendants and Highland and ServisFirst
will be realigned as plaintiffs.

B. **Motion for Leave to File Amended Complaint**

On July 26, 2019, BB&T moved for leave to file an amended
complaint.  BB&T seeks to change the interpleader from one of "rule"
interpleader under Rule 22 of the West Virginia Rules of Civil
Procedure to "statutory" interpleader under 28 U.S.C. § 1335.  While
the proposed amended complaint is substantially similar to the
original complaint, BB&T adds additional allegations based on
information it learned during the lengthy briefing in this case to
make a _prima facie_ showing of jurisdiction and venue.  BB&T's Mot.
Am. Compl. 3, ECF No. 54.

BB&T has attached the proposed amended complaint to its
motion as Exhibit 1 (ECF No. 54-1) and filed the motion in
accordance with the deadlines set by the court's June 20, 2019
scheduling order.  See ECF No. 28.  Highland and ServisFirst
concede that if the motion to remand is denied, they would not oppose
the motion to amend.  See ECF Nos. 58-60.  The New York Defendants
did not file any response to BB&T's motion to amend.

For purposes of subject matter jurisdiction, statutory
interpleader rests on diversity jurisdiction.  28 U.S.C.
§ 1335(a)(1); _Sec. Ins. Co. of Hartford v. Arcade Textiles, Inc._, 40
F. App'x 767, 769 (4th Cir. 2002).  BB&T seeks to bring this action

as statutory interpleader under 28 U.S.C. § 1335(a) because it allows for nationwide service of process pursuant to 28 U.S.C. § 2361, which would moot the disputes over personal jurisdiction in this case.  As the New York Defendants state in their notice of removal, 28 U.S.C. § 1335 would have provided this court with original jurisdiction had BB&T filed this matter in federal court in the first instance.  ECF No. 1 ¶ 3.  Section 1335 requires that the interpleader plaintiff have in "its custody or possession money or property of the value of $500 or more" and that the action involve "[t]wo or more adverse claimants, of diverse citizenship."  28 U.S.C. § 1335(a)(1).  Additionally, the plaintiff must deposit the interpleader funds "into the registry of the court."  Id.

Federal Rule of Civil Procedure 15(a)(2), invoked by BB&T, provides that a party who can no longer amend a pleading as of right can still amend by obtaining "the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  Id.  In applying Rule 15(a), "[t]he law is well settled that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."  Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999)

(quoting <u>Johnson v. Oroweat Foods Co.</u>, 785 F.2d 503, 509 (4th Cir. 1986)).

In the absence of any suggestion by defendants that the amended complaint results in prejudice or was motivated in bad faith, the court finds that the request to amend the complaint is warranted.

C. <u>Motion to Dismiss Interpleader Complaint</u>

Next, the New York Defendants move to dismiss BB&T's original interpleader complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2), or, in the alternative, transfer venue to the Western District of New York pursuant to 28 U.S.C. § 1404(a).

Respecting personal jurisdiction, the New York Defendants argue that they are neither "at home" for purposes of general jurisdiction nor do they have "minimum contacts" with West Virginia to satisfy the test for specific jurisdiction. New York Defs.' Mem. Supp. Mot. Dismiss Interpleader 5–10, ECF No. 9 ("ECF No. 9"). However, as explained above, the amended complaint now brings an action for statutory interpleader under 28 U.S.C. § 1335(a). Pursuant to 28 U.S.C. § 2361, district courts may allow nationwide service of process "for all claimants" in a statutory interpleader action. Federal Rule of Civil Procedure 4(k)(1)(C) also provides that "[s]erving a summons or filing a waiver of

service establishes personal jurisdiction over a
defendant . . . when authorized by a federal statute.".

Thus, the nationwide service of process under 28 U.S.C.
§ 2361 provides personal jurisdiction over claimants in a statutory
interpleader action. See Acuity v. Rex, LLC, 929 F.3d 995, 1001
(8th Cir. 2019) (noting that "the personal jurisdiction
requirements are relaxed for interpleader actions" because 28
U.S.C. § 2361 "allow[s] nationwide service of process"); Am. Gen.
Life Ins. Co. v. Brothen, 829 F. Supp. 2d 1369, 1372 (N.D. Ga.
2011) ("Service in a statutory interpleader action is thus
sufficient to establish personal jurisdiction over the named
defendant."); Mudd v. Yarbrough, 786 F. Supp. 2d 1236, 1242 (E.D.
Ky. 2011) ("Courts are clear that service of process pursuant to
the Federal Interpleader Act is sufficient to establish personal
jurisdiction over" a defendant, at least to the extent they claim
the proceeds of interpleader funds).

Because the amended complaint establishes personal
jurisdiction over the New York Defendants based on nationwide
service of process, their arguments regarding the lack of general
or specific jurisdiction are moot.

Alternatively, the New York Defendants move to transfer venue to the Western District of New York.[12] As a preliminary matter, section 1441(a), which governs the venue of removal, provides that venue of a removed action is proper in "the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441; Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665 (1953); PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 72 (2d Cir. 1998). There is no question that venue is proper in this district court.

Even where venue is proper and personal jurisdiction exists, parties may still request a discretionary transfer of venue under § 1404(a). Section 1404(a) provides in relevant part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). Courts must "weigh in the balance a number of case-

---

[12] The New York Defendants' also filed motions to transfer venue of the Highland and ServisFirst's respective crossclaims "to signal to the Court that, in the event the interpleader is maintained, there would merit further consideration of the applicable venue once BB&T was dismissed from this case." New York Defs.' Reply Mot. Dismiss Highland's Cross-cl. 10–11, ECF No. 27 at 11. The arguments for transferring venue mirror the arguments raised in the New York Defendants' motion to dismiss or alternatively transfer venue of the interpleader complaint. Id. The court will focus on whether transfer of the interpleader complaint is proper in the first instance.

specific factors" when evaluating a motion to transfer. <u>Stewart Organization, Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988). Our court of appeals has established four factors to consider: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." <u>Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.</u>, 791 F.3d 436, 444 (4th Cir. 2015).[13] "As a general rule, a plaintiff's 'choice of venue is entitled to substantial weight in determining whether transfer is appropriate.'" <u>Id.</u> (quoting <u>Bd. of Trs. v. Sullivant Ave. Props., LLC</u>, 508 F.Supp.2d 473, 477 (E.D. Va.2007)). Additionally, "a transfer motion will be denied if it would merely shift the inconvenience from the defendant to the plaintiff." <u>AFA Enterprises, Inc. v. Am. States Ins. Co.</u>, 842 F. Supp. 902, 909 (S.D.W. Va. 1994) (citing <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 645-46 (1964)).

---

[13] Prior to this Fourth Circuit decision in <u>Trustees of the Plumbers & Pipefitters National Pension Fund v. Plumbing Services, Inc.</u>, 791 F.3d 444 (4th Cir. 2015), this court considered a more detailed list of factors that included the following: "(1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice." <u>AFA Enterprises, Inc. v. Am. States Ins. Co.</u>, 842 F. Supp. 902, 909 (S.D.W. Va. 1994). The court will analyze these factors under the general rubric provided by the Fourth Circuit in <u>Trustees</u>.

First, the normal deference courts afford a plaintiff's choice of venue does not necessarily apply in an interpleader action when the plaintiff is a nominal party.  See Williams v. Lincoln Nat. Life Ins. Co., 121 F. Supp. 3d 1025, 1035 (D. Or. 2015); Bankers Tr. Co. of W. New York v. Crawford, 559 F. Supp. 1359, 1363 (W.D.N.Y. 1983) ("In an interpleader action . . . the plaintiff has no real interest concerning the jurisdiction in which the dispute between or among the defendants/claimants is to be litigated.  There is thus no reason to defer to its selection of forum.").  Although BB&T asserts that it has no real interest in the merits of this interpleader action, it has yet to be dismissed from this action, opposes the transfer, and still seeks attorney fees and costs, which suggests it still has some interest in the choice of forum.  See Jackson Nat. Life Ins. Co. v. Economou, 557 F. Supp. 2d 216, 221 (D.N.H. 2008) (giving interpleader's choice of forum no weight because it "has already been dismissed from the case and awarded its fees and costs, it has no real interest in its outcome, and in fact has filed a pleading stating that it takes no position on the request to transfer"); Mut. of Omaha Ins. Co. v. Dolby, 531 F. Supp. 511, 515 (E.D. Pa. 1982) (declining to accord deference to interpleader insurers who were "no longer parties because they have paid the proceeds of the policies into court and have been discharged").

Second, the New York Defendants allege that "all potential witnesses in this matter would properly be defined as 'party witnesses,' and thus more willing to testify in a different forum." ECF No. 9 at 13–14. The New York Defendants cite precedent from the Eastern District of Virginia, which distinguishes "non-party witnesses" from "party witnesses," i.e., the parties and those closely aligned with them who are "presumed to be more willing to testify in a different forum." Virginia Innovation Scis., Inc. v. Samsung Elecs. Co., 928 F. Supp. 2d 863, 871 (E.D. Va. 2013) (quoting Samsung Elecs. Co. v. Rambus, Inc., 386 F. Supp. 2d 708, 718 (E.D. Va. 2005)). The Eastern District of Virginia has held that "[t]he party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 636 (E.D. Va. 2003).

The New York Defendants provide a sworn statement from their attorney, Christopher R. Castro, attesting that the New York Defendants have no contacts with West Virginia. Castro Decl., ECF No. 9-1. In addition, Mr. Castro describes the agreements entered into by Mr. Mason, Meridian, and the New York Defendants and how the parties to those transactions agreed to submit themselves to venue in New York. Id. Even assuming the Eastern District of

Virginia precedent applies, Mr. Castro does not indicate who he expects to testify "or the degree to which it will be inconvenient to access that testimony in this district." Koh, 250 F. Supp. 2d at 636. Moreover, ServisFirst insists that transferring the case to the Western District of New York would be far less convenient when all its witnesses are in Tennessee and West Virginia. ServisFirst's Resp. Opp. Mot. Dismiss Interpleader 5, ECF No. 21.[14]

Third, the court must also weigh the convenience of the parties to the interpleader complaint. The New York Defendants assert that the forum selection clause in the factoring transactions entered into by Meridian and Mr. Mason provide that any lawsuit arising out of the transactions must be instituted in New York. ECF No. 9 at 13. Although ordinarily district courts should transfer a case to the forum specific in a valid forum selection clause, see Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 62 (2013), Highland, ServisFirst, and BB&T all assert that they were not parties to or informed about any New York transactions. ServisFirst's Cross-cl.

_____

[14] The court notes that the New York Defendants opposed ServisFirst's "fugitive response" to the motion to dismiss or alternatively transfer venue of the interpleader complaint, which was directed at BB&T only. New York Defs.' Reply Mot. Dismiss Interpleader 1 n.1, ECF No. 34. Inasmuch as the New York Defendants had opportunity to respond to ServisFirst's arguments in subsequent briefing, the court accounts for ServisFirst's response in its analysis.

¶¶ 19–20, ECF No. 18; Highland's Cross-cl. ¶¶ 22, 26, ECF No. 3;
BB&T's Resp. Opp. Mot. Dismiss Interpleader 13, ECF No. 30.  Even
assuming Mr. Mason could bind Highland under these agreements,
BB&T and ServisFirst were not bound by the forum-selection
clauses.

    The New York Defendants nonetheless argue that the
convenience of the parties weighs in favor of transfer to New York
because the underlying factoring transactions took place in New
York.  ECF No. 9 at 12.  They quote a district court opinion,
which found that "[w]hile there is a general presumption in favor
of a plaintiff's choice of forum, courts afford that choice
significantly less deference when . . . the transaction or
underlying facts did not occur in the chosen forum."  Nelson v.
Soo Line R. Co., 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999).  The
court must consider not only the New York transactions but also
the underlying transactions between ServisFirst and Meridian and
its affiliates, including Highland, which form the basis of
ServisFirst's claim.  ServisFirst's Cross-cl. ¶¶ 1–11, ECF No. 18.
None of these transactions, or any of BB&T's actions, relate to
New York.

    Finally, the court considers the interest of justice.
The New York Defendants argue that West Virginia has no interest
in having this dispute decided at "home" and that Mr. Mason, a

Tennessee resident, already agreed on behalf of himself and affiliated entities that New York Venue is proper. ECF No. 9 at 14–15. This understates West Virginia's interests here. Highland alleges that all its assets, operations, locations, and high-level officers are located in West Virginia. See Highland's Cross-cl. ¶ 2, ECF No. 3. It specializes in psychiatric mental health therapy for acute mental illness and substance abuse, with a focus on treating low-income residents and abused minors. Id. ¶ 1. Highland serves a vital role as one of the state's largest behavioral health services, particularly in response to West Virginia's ongoing "addiction and mental health public health crisis." Id. The freezing of Highland's assets may threaten its ability to provide these services to West Virginia residents.

After review of these factors, the court concludes that the New York Defendants have not met their burden. The convenience of the witnesses and parties do not weigh heavily in favor of New York. Indeed, BB&T, ServisFirst, and Highland would all find it more convenient to maintain the suit in this court. Although the factoring transactions involving the New York Defendants occurred in New York, the court also weighs ServisFirst's agreement with Highland and the location of relevant witnesses and parties. The interest of justice also favors keeping this case in West Virginia. Accordingly, the New York

Defendants' motion to dismiss the interpleader complaint or alternatively transfer venue is denied.

D. **Motion to Interplead Deposit Interpleader Funds**

BB&T has also moved for leave to interplead and to deposit the interpleader funds. <u>See</u> ECF No. 46. BB&T seeks a court order (1) restraining each of the defendants from instituting or prosecuting any claims against BB&T outside of the instant suit, (2) permanently enjoining the defendants from instituting or prosecuting further any suit or proceeding against BB&T concerning the deposit funds in this or any other court, (3) permitting BB&T to deposit the interpleader funds with the court, (4) requiring the defendants to interplead and to determine their rights to the deposit funds, (5) discharging BB&T from any further liability to the deposit funds once they are deposited with this court, and (6) awarding BB&T legal costs and attorney fees from the deposit funds on the condition that BB&T submits a statement of costs and attorney fees to this court for approval within 10 days of entry of this order. <u>See</u> ECF No. 46 at 4–5. When BB&T filed its interpleader complaint on April 5, 2019, Highland's deposit accounts held $411,381.37 in total. As of July 25, 2019, the total amount held increased to $434,199.41. <u>See</u> BB&T's Omnibus Reply Supp. Mot. Leave Deposit Interpleader Funds 3 n.2, ECF No. 57.

"Interpleader is a procedural device that allows a disinterested stakeholder to bring a single action joining two or more adverse claimants to a single fund." <u>Sec. Ins. Co. of Hartford</u>, 40 F. App'x at 769. It serves "to protect the stakeholder from multiple, inconsistent judgments and to relieve it of the obligation of determining which claimant is entitled to the fund." <u>Id.</u> Title 28 U.S.C. § 2361 provides that, in statutory interpleader actions under § 1335, districts courts "shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment." 28 U.S.C. § 2361. Assuming the interpleader complaint complies with § 1335's jurisdictional requirements, § 2361 allows the court to "enter an order restraining the claimants from instituting any proceeding affecting the property until further order of the court." <u>Rhoades v. Casey</u>, 196 F.3d 592, 600–01 (5th Cir. 1999); <u>see also Brooks Run Coal Co. v. Waggy</u>, 813 F.2d 400 (4th Cir. 1986).

Courts of appeals have found that interpleader actions generally proceed in two stages:

> During the first stage, the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader. During the second stage, the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial.

United States v. High Tech. Prod., Inc., 497 F.3d 637, 641 (6th
Cir. 2007) (citations omitted); see also Mack v. Kuckenmeister,
619 F.3d 1010, 1023–24 (9th Cir. 2010); Prudential Ins. Co. of Am.
v. Hovis, 553 F.3d 258, 262 (3d Cir. 2009); Ohio Nat. Life Assur.
Corp. v. Langkau ex rel. Estate of Langkau, 353 F. App'x 244, 248
(11th Cir. 2009); Rhoades, 196 F.3d at 600.

        Rule 67 of the Federal Rules of Civil Procedure, which
governs requests to deposit interpleader funds, provides as follows:

> (a) Depositing Property.  If any part of the relief
> sought is a money judgment or the disposition of a sum
> of money or some other deliverable thing, a party — on
> notice to every other party and by leave of court — may
> deposit with the court all or part of the money or
> thing, whether or not that party claims any of it.  The
> depositing party must deliver to the clerk a copy of the
> order permitting deposit.

Fed. R. Civ. P. 67(a).[15]  Once it deposits the disputed property with
the court, the court may discharge the disinterested stakeholder from
the proceeding.  See Hudson Sav. Bank v. Austin, 479 F.3d 102, 107
(1st Cir. 2007) ("[I]n an interpleader action in which the
stakeholder does not assert a claim to the stake, the stakeholder

---

[15] Rule 67 adds that "[t]he money must be deposited in an
interest-bearing account or invested in a court-approved,
interest-bearing instrument."  Fed. R. Civ. P. 67.  Under the
Southern District of West Virginia's General Order Regarding
Deposit and Investment of Registry Funds, "interpleader funds
shall be deposited in the [Disputed Ownership Fund] established
within the [Court Registry Investment System] and administered by
the Administrative Office of the United States Courts."

should be dismissed immediately following its deposit of the stake into the registry of the court.").

Again, Highland and ServisFirst request that the court defer ruling on this motion until it rules on Highland's motion to remand, but otherwise do not object to the deposit of the interpleader funds. The New York Defendants ask the court to defer ruling on this motion "until this Court has had an opportunity to address whether this interpleader action is proper, such issue being raised and fully briefed by the New York Defendants and presently ripe for this Court's determination," which the court has resolved above. New York Defs.' Resp. Opp. Mot. Deposit Interpleader Funds 1–2, ECF No. 53.

Inasmuch as the court denies Highland's motion to remand (see supra Section II.A), grants BB&T's motion to amend the interpleader complaint (see supra Section II.B), and dismisses the New York Defendants' motion to dismiss or alternatively transfer the interpleader complaint (see supra Section II.C), the court finds no reason to delay the deposit of interpleader funds and the dismissal of BB&T from this case. None of the parties dispute that the amended complaint provides this court with subject matter jurisdiction under § 1335, based on the diverse citizenship of the claimants, and personal jurisdiction under 28 U.S.C. § 2361 based on nationwide service of process. Am. Compl. ¶¶ 19-20, ECF No. 54-1. The only funds at issue are those held by BB&T. All parties agree that

ServisFirst and Highland have adverse claims against the New York Defendants. BB&T faces multiple liability if it decides to unfreeze the funds in favor of one of the parties and no other equitable concerns disfavor interpleader in this case. Pursuant to 28 U.S.C. § 2361, a permanent injunction restraining defendants from continuing or instituting suit against BB&T is necessary to protect it from these risks of liability.

Still, it would be premature to grant BB&T's request for attorney fees. Courts have discretion to award an interpleader plaintiff attorney fees and costs if the plaintiff is "(1) a disinterested stakeholder, (2) who had conceded liability, (3) has deposited the disputed funds with the court, and (4) has sought a discharge from liability." See Metro. Life Ins. Co. v. Kubichek, 83 F. App'x 425, 431 (3d Cir. 2003) (citing Septembertide Pub., B.V. v. Stein & Day, Inc., 884 F.2d 675, 683 (2d Cir. 1989)). Highland and ServisFirst request that the court defer ruling on that issue until BB&T discloses the amount of attorney fees and costs requested, after which they will respond more fully. Highland's Resp. Mot. Deposit Interpleader Funds 2, ECF No. 56 ("ECF No. 56"); ServisFirst's Resp. Mot. Deposit Interpleader Funds 1, ECF No. 55. Highland also intends to address whether the New York Defendants should be held responsible for any attorney fees and costs based on the principle that they "are generally awarded against the interpleader fund, but may, in the discretion of the court, be taxed against one of the parties when

their conduct justifies it."  ECF No. 56 at 2 n.1 (quoting
__Septembertide__, 884 F.2d at 683).

        Therefore, the court will grant BB&T's motion for leave to
interplead and deposit interpleader funds into the court except with
respect to attorney fees.  The court will refrain from ruling on the
issue of attorney fees and costs until it receives additional details
from BB&T and further briefing from the parties.

                                 III.

        Accordingly, it is hereby ORDERED as follows:

 1. Highland's motion to remand, filed June 7, 2019, is denied.

 2. The New York Defendants' motion to realign the parties, filed
    June 20, 2019, is granted, and ServisFirst and Highland are
    hereby aligned as plaintiffs in this action.

 3. BB&T's motion for leave to amend the complaint, filed July 26,
    2019, is granted.  The clerk is directed to file the proposed
    amended complaint, attached to this motion as Exhibit 1, as
    the amended complaint in this case.

 4. The New York Defendants' motion to dismiss or alternatively
    transfer venue of the interpleader complaint, filed May 30,
    2019, is denied.

5. BB&T's motion to deposit interpleader funds, filed July 12, 2019, is granted in all respects, except the ruling on the request for attorney fees and costs is deferred.  BB&T is directed to deposit the interpleader funds, plus accrued interest through date of deposit, with the district court. BB&T is also directed to submit a statement of attorney fees and costs to this court for approval by January 3, 2020.  Any objections to BB&T's submission shall be filed within 14 days thereafter.

6. The sum of $434,199.41 plus any addition thereto since July 25, 2019 shall be deposited by the Clerk of Court into the Registry of this Court and then, as soon as the business of his or her office allows, the Clerk of Court shall deposit these funds into the interest-bearing Court Registry Investment System (C.R.I.S.) administered by the Administrative Office of the United States Courts as Custodian, pursuant to Local Rule 67.1(a).  The sum of money so invested in the interest-bearing C.R.I.S. fund shall remain on deposit until further order of this Court at which time the funds, together with interest thereon, shall be retrieved by the Clerk of Court and redeposited into the non-interest bearing Registry of the Court for disposition pursuant to the further order of this Court. The Clerk of Court is authorized to deduct the investment services fee for the management of investments and the registry

fee in the C.R.I.S, set by the Judicial Conference, for
maintaining accounts deposited with the Court.

7. Upon deposit of the interpleader funds and a statement of its
attorney fees and costs, BB&T is discharged and released from
any liability in connection with the deposit funds, and
dismissed from this action.  The Court enjoins the above-named
defendants from instituting any further action against BB&T as
to the funds being deposited in the Court's registry.

The Clerk is directed to transmit copies of this order
to all counsel of record and any unrepresented parties.

DATED: December 20, 2019

John T. Copenhaver, Jr.
Senior United States District Judge

48